NUMBER 13-00-453-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 

KAY B. MOFFITT, Appellant,


v.


TOWN OF SOUTH PADRE ISLAND, TEXAS Appellee.

 

On appeal from the 107th District Court

of Cameron County, Texas.

 


O P I N I O N


Before Chief Justice Valdez and Justices Dorsey and Rodriguez

Opinion by Chief Justice Valdez


 Kay B. Moffitt requested the trial court to issue a writ of mandamus ordering the Town of South Padre Island (the "Town")
to approve the replat and subdivision of Lot 1, Block 192, Fiesta Isles Subdivision, South Padre Island, Texas into two
single family residential lots. The trial court denied her request for mandamus relief and dismissed her cause of action. We
affirm the decision of the trial court.

Factual and Procedural Background


 Moffitt owns Lot 1, Block 192 of Fiesta Isles Subdivision in South Padre Island, Texas, and has owned this property for
twenty-five to thirty years. It is one of only five lots zoned as single-family residential lots on the beach in the Town. The
lot is located on the corner of Gulf Boulevard and Sapphire Circle, and the rear of the lot faces the beach. In November of
1999, Moffitt applied with the Planning and Zoning Commission of the Town of South Padre Island (the "Commission")
for a proposed replat in order to subdivide her property, putatively 100 feet wide, into two equal single family residential
lots. 

 The Commission published notice of Moffitt's proposed replat, and gave neighboring realty owners written notice under
section 212.015 of the Texas Local Government Code. See Tex. Loc. Gov't Code Ann. § 212.015 (Vernon 1999). After the
hearing, the Commission denied the requested replat on grounds that the resulting lots failed to meet the minimum size
required by the Town of South Padre Island's Code of Ordinances (the "Code"). The proposed replat was resubmitted to
the Commission in December of 1999, and again the Commission denied the replat. Moffitt appealed the Commission's
decision to the Board of Aldermen, who also denied the replat. Moffitt then filed an action in district court for mandamus
or temporary injunction, arguing that because her proposed replat met all requirements of the Code and the Texas Local
Government Code, the approving authority had a ministerial duty to approve the replat and did not have discretion to deny
it. After an evidentiary hearing, the trial court denied Moffitt's requested relief, and this appeal ensued.

 Moffitt presents three issues for review. She contends that (1) there was no evidence or insufficient evidence to support
the trial court's finding of fact that the replat would not meet the minimum square footage as required by section 20-6(c)(4)
of the South Padre Island Code of Ordinances; (2) the uncontroverted evidence or overwhelming evidence established that
the replat met all requirements of the South Padre Island Code of Ordinances and section 212.010 of the Texas Local
Government Code, therefore, the trial court should have found that the Town had a ministerial duty to approve the replat;
and (3) the trial court erred in denying mandamus relief because the uncontroverted evidence or overwhelming evidence
established that the replat met all requirements of the South Padre Island Code of Ordinances and the Texas Local
Government Code.

Municipal Control of Plats and Subdivisions


 Under the Texas Local Government Code, a municipality's power to regulate subdivisions is broad. See Elgin Bank of
Texas v. Travis County, 906 S.W.2d 120, 121-23 (Tex. App.--Austin 1995, writ denied)(comparing regulation powers of
county and municipality). The governing body of a municipality may adopt rules governing plats and subdivisions of land
within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the
safe, orderly, and healthful development of the municipality. Tex. Local Gov't Code Ann. § 212.002 (Vernon 1999). The
municipal authority approves a plat only if the plat conforms to the general plan of the municipality and its current and
future streets, alleys, parks, playgrounds, and public utility facilities. See Tex. Local Gov't Code Ann. § 212.010 (Vernon
1999). The plat must also conform to the general plan for the extension of the municipality, taking into account access to
and extension of sewer and water mains and the instrumentalities of public utilities. Id. Further, the plat must conform to
any rules adopted to promote the health, safety, morals, or general welfare of the municipality. Id. However, the municipal
authority responsible for approving plats must approve a plat or replat that is required to be prepared under this subchapter
and that satisfies all applicable regulations. Tex. Local Gov't Code Ann. § 212.005 (Vernon 1999). The foregoing rules
that govern the issuance of plats are equally applicable to replats. See Tex. Local Gov't Code Ann. § 212.001 (Vernon
1999)(the definition of "plat" includes a replat).

Mandamus


 A writ of mandamus will issue to compel a public official to perform a ministerial act. Anderson v. City of Seven Points,
806 S.W.2d 791, 793 (Tex. 1991). An act is ministerial when the law clearly spells out the duty to be performed by the
official with sufficient certainty that nothing is left to the exercise of discretion. Id. Generally, mandamus will not issue to
compel a public official to perform an act which involves an exercise of discretion. Id. However, mandamus may issue in
a proper case to correct a clear abuse of discretion by a public official. Id.

 If a landowner believes that a municipality's action is arbitrary, then it may obtain relief by mandamus or mandatory
injunction. Kirschke v. City of Houston, 330 S.W.2d 629, 631 (Tex. Civ. App.-Houston [1st Dist.] 1959, writ ref'd
n.r.e.)(refusal to issue building permit), rev'd on other grounds, Austin v. Teague, 570 S.W.2d 389, 394 (Tex. 1978). 

Standard of Review

 An action for a writ of mandamus initiated in the trial court is a civil action subject to appeal as any other civil suit. 
Anderson v. City of Seven Points, 806 S.W.2d 791, 792 n.1 (Tex. 1991); Dallas Area Rapid Transit v. Dallas Morning
News, 4 S.W.3d 469, 473 (Tex. App.-Dallas 1999, no pet.); City of Beaumont v. Spivey, 1 S.W.3d 385, 389 (Tex.
App.-Beaumont 1999, pet. denied). In such actions, we review the trial court's findings of fact and conclusions of law in
accordance with standards generally applicable to a trial court's findings and conclusions. Anderson, 806 S.W.2d at 794
n.2; Dallas Area Rapid Transit, 4 S.W.3d at 473; City of Beaumont, 1 S.W.3d at 389; Univ. Of Texas v. Texas Legal
Found., 958 S.W.2d 479, 481 (Tex. App.-Austin 1997, no pet.). We review findings of fact for legal and factual
evidentiary support, and we review conclusions of law de novo. Dallas Area Rapid Transit, 4 S.W.3d at 473; City of
Beaumont, 1 S.W.3d at 389. 

 While findings of fact have the same force and dignity as a jury's verdict upon jury questions, they are not conclusive when
a complete reporter's record appears in the record, as here. See Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994);Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex. App.-San Antonio 1995, writ denied). If a reporter's record is filed,
unchallenged findings of fact are binding on the appellate court unless the contrary is established as a matter of law, or if
there is no evidence to support the finding. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 696-97 (Tex. 1986). The trial
court's findings of fact are reviewed for legal and factual sufficiency of the evidence to support them by the same standards
that are applied in reviewing the legal or factual sufficiency of the evidence supporting jury findings. Autohaus, Inc. v.
Aguilar, 794 S.W.2d 459, 461 (Tex. App.-Dallas 1990, writ denied); see Ortiz v. Jones, 917 S.W.2d. 770, 772 (Tex. 1996)
(per curiam).

 The legal conclusions of the trial court are not binding upon an appellate court; instead, the appellate court is free to draw
its own legal conclusions. See Pegasus Energy Group, Inc. v. Cheyenne Pet. Co., 3 S.W.3d 112, 121 (Tex. App.-Corpus
Christi 1999, pet. denied); Austin Hardwoods, Inc. v. Vanden Berghe, 917 S.W.2d 320, 322 (Tex. App.-El Paso 1995, writ
denied). When reviewing the trial court's legal conclusions, we evaluate them independently, determining whether the trial
court correctly drew the legal conclusions from the facts. Dallas Morning News v. Bd. of Trs., 861 S.W.2d 532, 536 (Tex.
App.-Dallas 1993, writ denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal
theory supported by the evidence. Mack v. Landry, 22 S.W.3d 524, 528 (Tex. App.-Houston [14th Dist.] 2000, no pet.);
Spiller v. Spiller, 901 S.W.2d 553, 556 (Tex. App.-San Antonio 1995, writ denied).

Size Requirements for Replat


 In her second and third issues, Moffitt argues that her proposed replat met all requirements of the Town of South Padre
Island, including minimum lot size, and therefore the Board of Aldermen had a ministerial duty to approve her replat, and
the trial court erred in failing to grant mandamus relief. The trial court's ultimate conclusion was that "Plaintiff's proposed
replat did not meet the requirements of the Zoning Ordinance of the Town (Section 20-6(C)(4) of the Town of South Padre
Island Code of Ordinances)." Section 20-6(C)(4) provides that "the minimum area of a lot shall be 5,000 square feet or as
recorded in the county courthouse as of November 7, 1979." 

 We begin our analysis of this issue by noting that the ordinance at issue is subject to differing interpretations. Under one
construction (Moffitt's proposed construction), the word "or" can be interpreted to imply " whichever is lesser," as in the
following construction: 

 the minimum area of the lot shall be 5000 square feet or as recorded in the county courthouse as of November 7, 1979,
whichever is lesser.



Under another equally reasonable construction, the word "or" can be read to imply "whichever is applicable," as in the
following construction:

 the minimum area of the lot shall be 5000 square feet or as recorded in the county courthouse as of November 7, 1979,
whichever is applicable based on the date of recordation.



Both constructions are equally valid in the absence of any clarifying evidence, but in this case we have evidence that the
persons charged with enforcing the ordinance apply the latter construction. See Citizens Active in San Antonio v. Bd. of
Adjustment, 649 S.W.2d 804, 806 (Tex. App.-San Antonio 1983, no writ) (the interpretation of an ordinance by the
officials charged with its enforcement may be accorded weight in construing the ordinance); City of Grand Prairie v.
Finch, 294 S.W.2d 851, 854 (Tex. Civ. App.-Dallas 1956, no writ). Specifically, Robert Fudge, the public works director
for the Town, testified that the minimum size of a lot that was recorded as of November 7, 1979, was the square footage as
recorded in 1979. There is no evidence in the record supporting Moffitt's alternative construction of the ordinance.
Accordingly, we overrule Moffitt's second and third points of error. Under this interpretation of the ordinance, we need not
address Moffit's first point of error. SeeTex. R. App. P. 47.1. Nevertheless, we further note that the record does not
support the legal and factual sufficiency challenge raised in Moffitt's first point of error. 

 An examination of the relevant plats and testimony pertaining thereto shows that the original plat, as a corner lot, has a
curved edge affecting both the frontage and size of the lot. As an initial matter, the City staff had calculated the frontage of
Moffitt's lot as 99.95 feet rather than 100 feet, thus precluding the creation of two 50 feet wide lots. Further, although
Moffitt's surveyor testified that the corner lot has a 50 foot frontage, he admitted that the frontage included some of the
curved edge of the lot abutting Sapphire Circle, and that it is "a matter of opinion" which part of the curve fronts on
Sapphire Circle and can be calculated as lot width. This evidence is legally and factually sufficient to sustain the trial
court's finding that the replat would not meet the legislative intent for minimum square footage as contained in section
20-6(C)(4). 

Conclusion


 The judgment of the trial court will not be set aside if there is any evidence of a probative nature to support it, and this
Court may not substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the
trial court's findings. Ray v. Farmers' State Bank of Hart, 576 S.W.2d 607, 609 (Tex. 1979); Harlingen Irrigation Dist.
Cameron County No. 1 v. Caprock Comm. Corp., No. 13-99-396-CV, 2001 Tex. App. LEXIS 3680, *17 (Corpus Christi
May 31, 2001, no pet.). The trial court's conclusion that Moffitt's proposed replat did not meet the requirements of section
20-6(C)(4) of the Town of South Padre Island Code of Ordinances was supported by legally and factually sufficient
evidence. 

 It is uncontradicted that Moffitt's proposed replat would fail to comply with the Code if the Code were construed to
preclude the subdivision of lots that had been recorded by 1979. Moreover, based on our review of the trial court's findings
and the record evidence, Moffitt's proposed replat would fail to comply with the Code even if the Code were construed to
require a minimum size of 5,000 square feet. Given our determination that Moffitt's proposed replat failed to meet the
requisites of the Town's Code of Ordinances, we need not address the other issues raised by appellant. SeeTex. R. App. P.
47.1.

 The judgment of the trial court is affirmed.



ROGELIO VALDEZ, 

Chief Justice





Do not publish.

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 1st day of November, 2001.